# CHARLESTON.

## STATE v. ANGUS.

Submitted April 9, 1912.    Decided April 23, 1912.

1. INDICTMENT AND INFORMATION—*Motion to Quash—Limitations.*

 On a motion to quash an indictment for a misdemeanor, showing the date of the offense, but not the date of the finding, the order of the court, showing the date of the return of the indictment, may be read in negation of the claim of a defense under the statute of limitation, apparent upon the face of the record, and also as showing indictment within statutory time. (p. 773).

2. GRAND JURY—*Administration of Oath—Presumption.*

 An order, showing a grand jury by whom an indictment was found were sworn as such is aided by a presumption that the oath administered was such as the law requires, and is sufficient, unless the order shows the contrary. (p. 775).

3. CRIMINAL LAW—*Former Jeopardy—Merger of Offense.*

 The offense of carrying an unlawful weapon is not merged in an indictment for maiming with the weapon alleged to have been so carried, the two offenses being wholly separable and legally independent. (p. 776).

Error to Circuit Court, Raleigh County.

Bill Angus was convicted of carrying deadly weapons, and brings error.

*Affirmed.*

*File & File,* for plaintiff in error.

*William G. Conley,* Attorney General, for the State.

POFFENBARGER, JUDGE:

Bill Angus, convicted of violation of the statute, inhibiting the carrying of pistols and other deadly weapons, sentenced to a six months term of imprisonment and adjudged to pay a fine of $50.00, complains of the rulings of the court on his demurrer to the indictment and his motion to quash the same, both of which the court overruled; and also of other rulings which will be noticed later in this opinion.

So much of the indictment as relates to the charge of the offense conforms to the requirements of the decision in *State v. Welch,* 69 W. Va. 547. It alleges the prisoner "on the 6th day of November, 1910, did unlawfully carry about his person a certain pistol without a state license therefor." The statute makes it unlawful for any person without a state license to carry about his person any revolver or other pistol or any one of certain other kinds of deadly weapons. Those having licenses are excepted in the enacting clause of the statute, wherefore it is, necessary to put this exception in the indictment. persons other than licensees, under certain circumstances, are also excepted by a proviso, but the rules of criminal pleading do not require negation in the indictment of the character or circumstances, authorizing the carrying of such weapons without a license, under the proviso. Thus far, the indictment is clearly good.

Failure of the indictment to show on its face commission of the offense within one year preceding the finding thereof is relied upon as a fatal defect. Though it gives the date of the offense it does not show on its face the date of the finding. Hence it does not appear from the face thereof that it was found within such period. Two opinions of this Court say an indictment for a misdemeanor must show this on its face.

*State* v. *Ball,* 30 W. Va. 382, and *State* v. *Bruce,* 26 W. Va. 153. In the former, the indictment set forth the date of the commission of the offense and the Court said it showed upon its face that the offense was committed more than one year before it was found. As that indictment was in the usual form, containing the recital, "Found at the April term of said court for the year 1884" &c., it did disclose upon its face the charge of an offense which had been barred by the statute of limitations at the time of the indictment. In the latter case, *State* v. *Bruce,* the indictment failed to show the time of the commission of the offense and to charge, in general terms, that it had been committed within one year. Neither of these cases presented the exact question raised here. This indictment gives the date of the offense but does not show it was more than a year before the finding. The trouble arises from the failure of the grand jury to fill the blank left in the printed form of indictment for the term of court at which it was found. Under the · principle declared in *State* v. *Bruce,* requiring the indictment to show an offense not barred by the statute, this one is bad, unless the record showing when it was found can be read and considered upon the motion to quash. If it can be, the date of the finding of the indictment as well as that of the offense, making it clearly good, will appear, for the indictment was found at the January term of the court, 1911, less than one year after the date of the offense. The question raised, therefore, was not decided by either of the two cases relied upon for the plaintiff in error. The general terms used in the opinions and in the *syllabi,* importing necessity of disclosure of the two dates or their equivalent on the face of the indictment itself and not otherwise, went beyond the questions submitted for decision and may be regarded as *obiter.* In the *Ball Case,* it was unnecessary to look elsewhere than to the indictment for the essential facts appeared on its face. In the *Bruce Case,* an order showing the date of the indictment would not have aided that instrument, if it could have been adverted to, for neither the indictment nor the order showed the date of the offense. Here the indictment shows one date and the order the other. As the cases are not parallel and the question here under consideration has not been actually decided, we are

not bound by the general terms used in those two cases, and are at liberty to inquire whether the order may be read and considered as showing one of these two essential facts.

Bishop on Criminal Procedure, at section 741, says: "And a demurrer puts the legality of the whole of the proceedings in issue, as far as they judicially appear; for the court is bound to examine the whole record, to see whether they are warranted in giving judgment upon it; and it is open to objections, not only to the subject matter of the indictment, but also to the jurisdiction of the court in which the indictment was found." Under this principle, the prisoner may avail himself of any fatal defect disclosed by the record. The rule should work both ways. If his demurrer brings up the record to discharge him, in case it is defective, there is no reason why it should not come up to sustain the state. Omissions of vital matter from the indictment could not be supplied by·the recitals of an order, since the indictment must charge an offense. Here the charge is complete. The demurrer and motion to quash set up a defense in the nature of a plea of confession and avoidance, as shown by the indictment, read alone, but utterly destroyed by the reading of the order with the indictment. The orders pertaining to indictments may be read for other purposes in resistance of motions to quash. *State* v. *Groves,* 61 W. Va. 697, 700; *State* v. *Compton,* 13 W. Va. 852. In some jurisdictions, the indictment need not negative defense under the statute. *Thompson* v. *State,* 54 Miss. 740; *United States* v. *Cook,* 17 Wall. 168; Bish. Crim. Pro., secs. 405, 638. Requirement thereof is contrary to the rules of common law pleading, and we do not feel warranted in extending the principle of *State* v. *Bruce* and *State* v. *Ball* beyond the application thereof therein made. To do so here would release the prisoner on a bare technicality, and in violation of the common law rules of criminal pleading.

Failure of the order, impanelling the grand jury, to disclose the form of the oath administered or to recite administration of the oath required by law, is relied upon to sustain the motion to quash. It says the members of the jury "were sworn a grand jury in and for the body of the county." Sufficiency of a recital in almost the exact terms of this one was declared in *State*

v. *Tucker,* 52 W. Va. 420, 429. Nothing to the contrary appearing, it is presumed the usual oaths were administered. The recital shows no oath different from that required by law. Impliedly it says the legal oaths were administered, since it declares the men were sworn a grand jury in and for the body of the county of Raleigh. In *Territory* v. *Woolsey,* 3 Utah 470, the recital rebutted the presumption of regularity by disclosure of an oath different from that required by law.

The prisoner had been tried on a charge of maiming one Canterberry, whom he had shot through the hand, with the pistol in question, in the course of a combat with one Stover, and acquitted. These agreed facts are the basis of pleas of former jeopardy and former acquittal, which the court, trying the case in lieu of a jury by agreement, thought were not sustained by the facts. The offense here charged, though connected with the alleged maiming, the subject matter of the former trial, was no part of it in the legal sense of the term. The doctrine relied upon to sustain this assignment of error is that of inclusion of offenses, not applicable here. In the former case, there might have been a conviction, though the pistol was carried under a license or the shooting occurred on the prisoner's own premises, and there could have been an acquittal, as there was, though the pistol had been admittedly carried unlawfully. In none of the instances given in Judge GREEN's opinion in *Moundsville* v. *Fountain,* 27 W. Va. 182, is there such latitude. If, on a trial for murder, the evidence proves only an assault and battery, or manslaughter, the jury must convict of the lower offense or refuse to perform their sworn duty. These lower offenses are included in the charge of murder and inseparable from it. The offense here charged was complete before the shooting occurred and constituted no part of the alleged maiming. That the shooting was part of the maiming and done with the pistol is immaterial. Had it been done with a pistol snatched from the hand of a bystander or picked up in the store in which the altercation took place, the result would have been the same. Thus it plainly appears the antecedent unlawful carrying is completely separable, in a legal sense, from the shooting, but the shooting was inseparable from the maiming as charged.

Hence the findings of the court on the issues raised by the special pleas were correct.

Seeing no error in the judgment, we affirm it.

*Affirmed.*